Mr. Justice Thacher
delivered the opinion of the court.
Burford filed his bill in equity in the circuit court of De Soto county, to enjoin a sale under execution, of a slave, which he claimed as his property. This execution, which bore date the *389 24th day of November, 1843, was issued upon a judgment obtained against Benjamin B. West. In the month of January, 1843, and prior to the rendition of the judgment aforesaid, West sold the slave in question to William A. Brown for $350, who also agreed that West might redeem him in either the month of September or November following, upon paying $400, which West having failed to do, Brown in November, 1843, gave West $150 more, and took a bill of sale of the slave from West and wife. At this juncture, Brown again agreed that West might redeem the slave, if he could sell him for more money, and the same day he bargained with Burford for the sale of the slave, at an advance of twenty-five dollars over Brown’s amount of purchase-money. Burford received the slave from Brown upon paying him $500, and took a bill of sale from West. Brown gave up to West his bill of sale.
The testimony of Brown proves that his purchase of the slave in February, 1843, was bona fide. He says that he purchased the slave of West in February, 1843, for which he gave him $350, and agreed to let him redeem the slave in September or November following. Brown does not say that the sale was not absolute to him, or that the agreement permitting West to redeem the slave was a part of the contract of the sale. The language will not bear such a construction that the agreement constituted a part of the contract, nor will the supposed inadequacy of the consideration aid in supporting such an opinion. Lane v. Dickerson, 10 Yerg. 373. This agreement was altogether ex gratia upon the part of Brown, for the testimony elsewhere- shows a strong disposition on his part to befriend West, who was in difficulties. Brown adds that West failed to redeem the slave at the time allowed, whereupon Brown also adds he gave West $150 more, and took a bill of sale from him and his wife. This 'sum can only also be considered in the light of a gratuity, for he had distinctly declared previously that the purchase-money was fixed at $350. But even after this gift of $150, Brown expressed his willingness that West should sell the slave again if he could find a purchaser, at a greater sum than $500, which he had already *390 given, and this actually occurred. These circumstances only evince a liberal spirit of generosity in Brown towards West. The sale to Brown in February, 1843, was bona fide and absolute, but admit that the agreement to redeem actually existed even up to the time of the date of the judgment upon which the execution issued, the judgment became a lien only upon a mere contingency or privilege which West failed to avail himself of. There was never a period after the original sale to Brown, that the title to the slave became reinvested in West. The sale to Burford by West was but the exercise of an agency allowed him by Brown, and was not a transfer of title to West. The formalities observed respecting the return of the bill of sale, and the execution of a bill of sale by West to Burford, amount to nothing in a case of bargain, sale, and delivery of personal property.
Decree affirmed.
Mr. Justice Clayton
delivered the following dissenting opinion.
I differ from the majority of the court in this case. Brown, whose deposition is taken, thus states the .transaction : “I purchased Isaac of West in February, 1843, for which I gave him $350, and agreed to permit him to redeem said negro in either September or November following, by his paying $400. West failed to redeem at the time, and I gave him $150 more and took a bill of sale from him, at which time I gave him also the privilege of redeeming said negro, if he could sell him for more money. Before I got out of town on this last mentioned day, West sold Isaac for twenty-five dollars more than I had given him, to Burford, and I then gave him up, viz. (West) the bill of sale, when Mr. Burford, who was counting the money for West, was requested by West to hand it over to me; he did so in part, and West paid me the balance, and gave a bill of sale to said Burford.”
In answer to a direct interrogatory on the subject of this last sale, Brown said, “ he considered the purchase absolute, and granted to West the privilege of reselling by refunding the amount I paid him for the boy, as a matter of contract.”
*391 Brown did not at any time have the negro in possession, but he remained with West until delivered to Burford.
In my view, the original contract, as detailed by Brown, was either a mortgage or a sale, with liberty to repurchase. If closely scrutinized in connection with the other testimony, it was probably the former, but I shall regard it as the latter, because that is the most favorable position for Burford. The contract then passed the legal title to Brown, with an equity in West to divest such title, by a given day, by compliance with certain terms. By such compliance, the title would revest in West.
The judgment of Goodman & Means was obtained before the day appointed for repayment or repurchase, and it bound this equity. It became a lien which they could have enforced, as against West and Brown both, in a court of chancery. The judgment bound the actual interest of West, whatever it might be.
Brown paid West $150 for this right of repurchase, after it was bound in his hands by the judgment. When West sold to Burford, Brown surrendered his title to West, who made a new title to Burford. Brown says expressly, he neither pretended to sell the boy to Burford, nor to assign him the bill of sale. At most, West could only pass to Burford .the interest of Brown; this was incumbered by the lien of the judgment, to the extent of the $150, which was the agreed value of the right of repurchase.
There is room to contend that the whole title was bound by the judgment, as soon as it revested in West. But I look at the substance, rather than the form, and limit the lien, as it existed in the hands of Brown. But there was a clear vesting of the legal title in West, at the moment; the lien which had attached to the equity adhered to it, and became operative upon the legal title in his hands, and subject to the execution. Bur-ford received the title in that condition. A transitory seisin for an instant, will not let in an incumbrance, to the manifest injustice of the case. 4 Kent, 38. Yet a court of equity may lay hold of this instantaneous seisin to work out the ends of justice.
*392 In this case that end seems to me to be promoted, by holding that the lien is entitled to satisfaction pro tanto, out of the equity of West, which became annexed to the legal title in his hands after the judgment, for the purpose of his making title to Burford. And this is especially the case, as Brown never had possession of the slave nor title, but for a few hours by bill of sale. Even his preference over the judgment creditor is, in my apprehension, by no means free from doubt.